**QWEST COMMUNICATIONS INTERNATIONAL, INC., and Qwest Communications Corporation, Plaintiffs,**

v.

**William E. THOMAS, Terence Maher, and Ronald Kraemer, Defendants.**

No. Civ.A. 99–K–431.

United States District Court,
D. Colorado.

June 10, 1999.

Steven J. Merger, Dorsey & Whitney
LLP, Denver, CO, James S. Mowery, Jr.,

Fred Michael Speed, Jr., Law Offices of Mowery & Youell, Worthington, OH, for plaintiff.

Sandra L. Spencer, White and Steele, Denver, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

### I. *Introduction.*

Plaintiffs Qwest Communications International and Qwest Communications Corporation (a wholly owned subsidiary of Qwest Communications International) (collectively "Qwest") filed a complaint for Declaratory Judgment against two former executive employees of Qwest, William Thomas and Terrence Maher. Thomas and Maher were formerly employed by LCI International before it merged with Qwest, and continued their employment with Qwest for approximately six months following the merger. Both employees later left Qwest although under slightly different circumstances. They now contend they are entitled to stock options originally promised to them in an employment contract entered into with LCI that was continued, albeit it in modified form, after LCI merged with Qwest. Qwest asserts the modifications to these employment contracts at the time of the merger effectively eliminate Thomas' and Maher's entitlement to the stock options given the timing and circumstances of their departure from Qwest. It is this contractual dispute over the ownership to the stock options that forms the substantive dispute of the Declaratory Judgment action filed by Qwest against the former executives.

After this action was filed, Defendants filed a claim for breach of contract against Qwest in state court in Ohio which was removed to the United States District Court for the Southern District of Ohio. Defendants in that case have moved to remand the case to state court and that motion is pending. The parties and the issues in dispute in that case are identical to the parties and issues in this case although realigned in the opposite stance, i.e. plaintiffs in that case are defendants here and vice versa.

Pending before me is Defendant Thomas' motion to dismiss based on discretion afforded by the Declaratory Judgment Act, lack of personal jurisdiction, and improper venue. This motion was filed simultaneously with both Thomas' and Maher's filing of the breach of contract claim in Ohio state court. Notably, at this time only Defendant Thomas has been served in this action. Qwest has filed an amended complaint to include Ronald Kraemer, a current employee of Qwest residing in Texas, to the defendants in this case. I heard oral argument on Thomas' motion to dismiss on June 4, 1999. This opinion follows.

### II. *Background.*

The facts relevant to the disposition of the pending motion to dismiss are mostly procedural in nature and contested by the parties through affidavits appended to the complaint, motion, answer, and reply brief. Qwest contends both former executives requested an explanation of their rights with respect to their stock options under the employment contracts before leaving employment with Qwest. After their departure, Thomas made a demand, through counsel, to exercise the stock options he believes he is entitled to under the contract. Upon consideration of the matter, Qwest's counsel realized there were two potential lawsuits regarding stock options under the contracts based on very similar fact patterns—the first with Thomas (residing in Ohio), and the second with Maher (a resident of Illinois). Qwest however, claims at the time, it had not been informed that Maher was represented or was seeking representation for a lawsuit against Qwest. As such, Qwest retained outside counsel and filed this action for declaratory judgment in Colorado based on diversity jurisdiction.

Defendant Thomas contends the filing of this suit was procedural fencing on the part of Qwest to make the lawsuit more expensive and inconvenient to the natural

plaintiffs in this case. Specifically, Thomas alleges his counsel sent a demand letter to Qwest on January 28, 1999 and later contacted in-house counsel for Qwest via telephone seeking a response to the demand letter on February 8, 26, and March 15. On the first two occasions, Qwest indicated there was a delay due to personnel vacations and a response would be forthcoming. In the last phone call, counsel for Qwest informed Thomas that Qwest had retained outside counsel, had filed this suit for declaratory judgment on March 4, and that Qwest considered this suit to be its response to the demand letter. On the same day as the last phone contact, Thomas and Maher filed suit in state court in Columbus, Ohio. Qwest removed that case to District Court for the Southern District of Ohio, and Thomas and Maher have moved to remand it back to the state court.

Qwest now adds defendant Kraemer, a current employee of Qwest residing in Texas. Like Thomas and Maher, Kraemer was employed by LCI before LCI's merger with Qwest. Kraemer, however, is still employed by Qwest although the Amended Complaint does not specify what position Kraemer presently holds with the company. Similar to the dispute with Thomas and Maher, Qwest alleges an ongoing dispute with Kraemer over the vesting of his stock options under the terms of the Non–Qualified Stock Option Agreement. The similarities with Thomas and Maher, however, end there. The dispute with Kraemer revolves around his refusal to sign away rights to certain vesting options under the Non–Qualified Stock Option Agreement as a condition of his continued employment with Qwest. As a result of this refusal, Qwest now alleges Kraemer is impliedly asserting he is entitled to full vesting of his stock options upon ending his employment with Qwest. Characterizing this situation as another dispute over stock options under the Non–Qualified Stock Option Agreement, Qwest has amended its complaint to include a declaration that Kraemer will not be entitled to a grant of fully vested options upon leaving Qwest.

The contracts at issue in this dispute are the Continuity Agreements which covered the stock options owed to the employees while they were at LCI and the Non–Qualified Stock Option Agreements which were signed by both employees shortly after the LCI merger with Qwest. The Continuity Agreements contain a clause titled "Governing Law: Venue," stating that the governing law is New York State law and that both parties to the agreement consent to jurisdiction and venue in "any state in which the Executive resides at the commencement of such suit, action or proceeding and waives any objection, challenge or dispute as to such jurisdiction or venue being proper." The Non–Qualified Stock Option Agreements do not contain a similar consent to venue and jurisdiction but specify Delaware state law as the applicable law governing all interpretations of that contract. As such, when the case between Qwest and the former employees proceeds on the merits, it will be Delaware or New York state law that governs the different contract disputes.

III. *Applicable Standard of Review for the Motion to Dismiss.*

■ The Declaratory Judgment Act, codified at 28 U.S.C. § 2201 (1993) and Fed. R.Civ.P. 57, has been interpreted to grant extensive discretion to the district court to stay or dismiss the action;

> By the Declaratory Judgment Act, Congress ... created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of

practicality and wise judicial administration.

*Wilton v. Seven Falls Company,* 515 U.S. 277, 288, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). A district court's decision to grant, stay, or dismiss a declaratory judgment action will be reviewed only for abuse of discretion. *Id.* at 288–89, 115 S.Ct. 2137.

## IV. *Merits.*

Thomas asserts three grounds for dismissal, namely, lack of personal jurisdiction, improper venue, and equitable consideration of where this case is best heard under the broad discretion to stay or dismiss the case granted to the court by the Declaratory Judgment Act. While the Declaratory Judgment Act expanded the remedies available to the federal courts, it did not expand our jurisdiction to include cases that we could not otherwise hear. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671–72, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). As such, I must first determine jurisdiction and venue are proper before I can decide to hear or dismiss a case over which I may not initially have jurisdiction. *Scott v. Chevron U.S.A., Inc.,* 824 F.Supp. 613, 614 (1993).

### A. *Personal Jurisdiction.*

■ " 'Because a court without jurisdiction over the parties cannot render a valid judgment, we must address Defendants' personal jurisdiction argument before reaching the merits of the case.' " *OMI Holdings, Inc. v. Royal Insurance Co. of Canada,* 149 F.3d 1086, 1090 (10th Cir. 1998) (quoting *Leney v. Plum Grove Bank,* 670 F.2d 878, 879 (10th Cir.1982)). In a case such as this, where a defendant moves to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion. *Rambo v. American Southern Ins. Co.,* 839 F.2d 1415, 1417 (10th Cir.1988). Such prima facie case can be established via affidavit alleging facts that would support jurisdiction over the defendant. Inconsistencies between the parties' affidavits must be resolved in favor of the plaintiff. *Behagen v. Amateur Basketball Assoc. of the USA,* 744 F.2d 731, 733 (10th Cir.1984).

■ Subject matter jurisdiction in this case is based on diversity under 28 U.S.C. § 1332 as Qwest is a Delaware corporation, Thomas, Maher, and Kraemer are residents of Ohio, Illinois, and Texas respectively, and the stock options in question are valued in excess of one million dollars for Thomas and Maher. There are three ways in which a court may obtain personal jurisdiction over a defendant; consent by the parties, presence in the forum state, and actions by the defendant which affect people in the forum state. *Ruggieri v. General Well Service, Inc.,* 535 F.Supp. 525, 528 (D.Colo.1982). Here, Thomas has not consented to jurisdiction in this forum and the first of the two contracts at issue, the Continuity Agreement, has a clause subjecting both parties to jurisdiction in "any state in which the Executive resides." (Def.'s Mot.Dismiss.Ex. A ¶ 15 at 13.) Additionally, neither Thomas, Maher, nor Kraemer currently reside in Colorado thereby defeating the second means of obtaining personal jurisdiction over the defendants in this case.

■ Analysis under the third possible method of obtaining personal jurisdiction over a defendant proceeds under two separate inquiries; whether the state's long-arm statute provides for jurisdiction of defendants served outside of the forum state, and whether such jurisdiction is proper under the Due Process Clause of the Fourteenth Amendment. *Schocket v. Classic Auto Sales, Inc.,* 817 P.2d 561, 562 (Colo.App.1991), aff'd. 832 P.2d 233 (Colo. 1992). Colorado's long-arm statute extends jurisdiction of the courts to the fullest extent permitted by the Fourteenth Amendment, *Public Warranty Corp. v. Mullins,* 757 P.2d 1140, 1141 (Colo.App. 1988), and specifically provides for personal jurisdiction over a person in any cause of action arising from the transaction of business within the state, *Colo.Rev.Stat.*

§ 13–1–124(1)(a) (1998). Thus the jurisdictional question in this case is reduced to an analysis of whether each Defendant's business contacts with Qwest satisfy minimal contacts analysis under the test of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Under this analysis, I may exercise personal jurisdiction over a nonresident defendant only where the defendant has established minimum contacts with the forum state consistent with *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

■■■ The minimum contacts standard may be met if the defendant has either purposefully directed activities at the residents of the forum state which gave rise to, or were related to, the plaintiff's alleged injuries, or if the defendant has established continuous and systematic general business contacts with residents of the forum state. *OMI Holdings*, ·149 F.3d at 1091. To assert personal jurisdiction over the nonresident Defendants based on their specific actions directed at the forum state, I must examine both the quality and quantity of Defendants' contacts with Colorado. *Id.* at 1092. Based on Plaintiff's affidavits and the deference given to the assertions therein, personal jurisdiction. over Thomas is proper in this court. Although premature, in the event Maher were to be served, this court would have personal jurisdiction over him as well. In its amended complaint, Qwest does not allege facts supporting personal jurisdiction over Kraemer by this court.

■■■ Thomas argues his actions were not purposefully directed towards residents of Colorado but were only incidental to his employment in Ohio as an executive employee of Qwest. The record however, contains sufficient evidence to support personal jurisdiction over Thomas based on his actions directed toward the corporate resident of Colorado. Thomas knowingly entered into the contractual agreement containing the stock options in question with a Colorado resident at the time of the merger between LCI and Qwest. He was evidently aware of the contract's origin and administration in Colorado because he sought the advice and interpretation of administrative officials of Qwest in Colorado regarding several terms in this contract including his rights to the stock options. In addition, Thomas traveled to the state on more than one occasion to conduct business as an executive of Qwest. On at least one of those occasions, he followed up on his earlier inquiries into his contractual rights under the agreement while in Colorado. After leaving Qwest, Thomas attempted to exercise these options by making demands on administrative personnel at Qwest in Denver. When administrative decisions concerning the stock options were not made in his favor, Thomas sent a demand letter to in-house counsel for Qwest in Colorado and then followed up this written request with repeated phone calls to Qwest's counsel in Colorado. Additionally, Thomas was an executive of LCI who negotiated his continued employment with Qwest at the time of the Qwest–LCI merger, and later traveled to Qwest headquarters in Denver as part of his executive duties and responsibilities. Thomas also sent a letter to a vice president of Qwest in Colorado, noting adverse diminutions in his executive duties and seeking the appropriate corporate response to these changes. It was foreseeable, therefore, that Thomas could be hailed into court in Colorado to resolve disputes over his employment and employment benefits under the contract he entered into with a Colorado resident, Qwest. Thus personal jurisdiction over Thomas is proper in this case regarding the stock options available to him under his employment contract and therefore, I do not reach the analysis of general personal jurisdiction based on continuous and systematic business contacts with the forum state.

**B.** *Venue.*

Qwest asserts venue under 28 U.S.C. § 1391(b) (1990). (Am.Compl. ¶ 7 at 2.) As jurisdiction in this case is based on diversity of citizenship, however, venue is correct-

ly assessed under 28 U.S.C. § 1391(a). As such, the action may only be brought in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(a) (1990). Defendants Thomas, Maher, and Kraemer reside in separate states such that venue in this district cannot be sustained by the first or last method of § 1391(a).

 Thomas argues venue is improper in this district because none of the relevant events giving rise to the litigation occurred in Colorado. (Def.'s Mot. Dismiss at 14.) This assertion overlooks the ultimate event which spawned the litigation, the decision by Qwest administrators that Thomas was no longer entitled to his stock options due to the circumstances under which he left Qwest. This decision was made by Qwest in Colorado. Indeed, it was this decision and previous correspondence and communication with officials at Qwest headquarters in Denver that led Thomas to believe he was entitled to stock options which are now being withheld by Qwest. These similar but separate interactions between each Defendant and Qwest led to the administrative decisions in Denver that caused Qwest to file the present declaratory judgment action. Thus, venue is proper in this district under 28 U.S.C. § 1391(a)(2) since a substantial part of the events giving rise to the claim for relief occurred in Denver.

### C. Equitable Considerations under the Declaratory Judgment Act.

 In *Wilton,* the Court held district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites. *Wilton,* 515 U.S. at 282, 115 S.Ct. 2137. Be-

cause the case was filed in this court before the filing of the Defendants' action in Ohio, Qwest argues jurisdiction "cannot be arrested or taken away by the proceedings of another federal district court." (Pl.'s Resp. Def.'s Mot. Dismiss, at 17–18 (quoting *O'Hare International Bank v. Lambert,* 459 F.2d 328, 331 (10th Cir.1972))). However, the presumption usually afforded the party who files first is not a mechanical rule. The mere fact that a declaratory judgment action, seeking nothing more than a declaration of the parties rights and defendant's nonliability, is first-filed in a different federal court, does not entitle that action to deference. *Republic Ins. Co. v. Sinclair Oil Corp.,* 791 F.Supp. 278, 280 (D.Utah 1992) (citing 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2758 (1998)); *Perez v. Ledesma,* 401 U.S. 82, 119 n. 12, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971) (Brennan, J., dissenting). To quote Ecclesiastes (9:11): "The race is not to the swift, nor the battle to the strong." Indeed, *Wilton* makes it clear. that the court must decide which case will more fully serve the needs and convenience of the parties and provide a comprehensive solution of the general conflict rather than rely mechanically on which case was filed first. *Wilton,* 515 U.S. at 286–87, 115 S.Ct. 2137. Thus, it is settled that granting or dismissing a declaratory judgment action is within the sound discretion of the trial court exercised in the public interest.

*Wilton* requires me to examine " 'the scope of the pending [ ] court proceeding and the nature of defenses open there.' " *Id.* at 283, 115 S.Ct. 2137 (quoting *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942)). The applicable discretionary standard for a motion to dismiss or stay a declaratory judgment was articulated in *Brillhart:* "The federal court may have to consider whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties

are amenable to process in that proceeding, etc." *Id.* at 495, 62 S.Ct. 1173.

The Tenth Circuit expanded on the *Brillhart* factors in *St. Paul Fire and Marine Ins. Co. v. Runyon,* 53 F.3d 1167, 1169 (10th Cir.1995). There, the court reviewed a case in which the district court had refused to exercise jurisdiction over an action brought by a nurse against an insurance company under a professional liability policy for indemnification against covered professional liability claims. *Id.* Similar to the facts in the instant case, the defendant in *Runyon* had initially informed St. Paul Insurance that he would initiate a suit in state court for breach of contract if the insurance company would not assume his defense. *Id.* The insurance company responded by filing a declaratory judgment action in federal court in the Western District of Oklahoma based on diversity. *Id.* The defendant then immediately filed his threatened state court breach of contract action and moved to dismiss the declaratory judgment action pending in federal district court. *Id.* The federal district court dismissed the insurance company's declaratory judgment suit. The Tenth Circuit found it had not abused its discretion and explained the district court

> should weigh various factors to determine whether or not to hear a declaratory judgment action. Such factors may include "[1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race to res judicata'; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective."

*Id.* at 1169 (quoting *State Farm Fire and Casualty Co. v. Mhoon,* 31 F.3d 979, 983 (10th Cir.1994)).

Qwest argues the case should be heard here instead of Ohio due to the location of witnesses and documents, asserting that "a ruling from this court will completely resolve the differences between Qwest and the defendants." (Pl.'s Resp. at 15.) Qwest does not, however, identify such witnesses nor explain the relevance of their testimony.

 Reviewing the factors in *Runyon,* I must first determine whether the instant declaratory judgment action will effectively settle the controversy between Qwest, Thomas and Maher. Qwest's complaint seeks a declaration of nonliability for the stock options claimed by Thomas and Maher under their respective Non–Qualified Stock Option Agreements. (Am.Compl. at 6.) Left unresolved by such a declaration would be Qwest's liability under the Continuity Agreements that originated with LCI and any claims for damages resulting from breach of contract Defendants may have if Qwest is found to be liable for some or all of the obligations specified by the agreements. Additionally, counsel for Qwest has not yet served on Defendant Maher nearly three months after filing the complaint with this court, despite the fact that Maher has joined the pending suit alleging breach of contract against Qwest in Ohio. I find this declaratory action would not settle the entire controversy nor serve a useful purpose in clarifying the legal relations at issue where these relations will be addressed along with all the contract disputes and with all interested parties in attendance in the Ohio court.

In its amended complaint, Qwest implies Kraemer is similarly situated to Thomas and Maher with respect to a dispute over stock options and is therefore appropriately added to this declaratory judgment action. This mischaracterizes the facts of each Defendant's situation. Both Thomas and Maher had previously signed the documents and made the acknowledgments that Qwest is now demanding from Kraemer, after they joined Qwest. Thomas and Maher then left Qwest approximately six

months later. Their suit in Ohio and the claims against them in the instant declaratory judgment action are based on the interpretation of their rights under the Continuity Agreement with LCI and the Non–Qualified Stock Option Agreement with Qwest. Central to the interpretation of these contracts and their rights thereunder will be the effect of disclaimers Qwest claims Thomas and Maher made in consideration of their continued employment as well as specific circumstances of their departure from Qwest as specified in the Non–Qualified Stock Option Agreement.

Kraemer, on the other hand, is still employed by Qwest. Qwest only alleges it has demanded Kraemer sign a waiver of certain of his rights under the Non–Qualified Stock Option Agreement and that he has thus far refused to do so. Whether he has done so, whether he can be forced to do so in consideration of continued employment with Qwest, and whether Qwest will terminate him if he continues to refuse their repeated demands, are all issues that remain to be resolved before determining whether Kraemer's situation is analogous to that of Thomas and Maher. Additionally, the Non–Qualified Stock Option Agreement contains the following terms and conditions:

(a) none of such options would vest or become exercisable before the end of their first year of employment, (b) the first 20 percent of such options would vest and become exercisable after their first year of employment, (c) additional 20 percent portions of such options would vest and become exercisable after the second, third, fourth and fifth years of their employment, respectively, (d) in the event that they voluntarily terminated their employment, they were was [sic] required to exercise all vested and exercisable options within 90 days of their termination, (e) in the event that they were involuntarily terminated; they were not permitted to exercise any otherwise vested and exercisable options beyond the date of their termination, and (f) all options which were unvested and unexercisable as of their termination date, and all vested and exercisable options which they did not exercise within that 90 day period, become void.

(Pl.'s Amend.Comp. ¶ 15 at 4.) Thus, the contract dispute at issue between Thomas, Maher, and Qwest revolves in part around the specific circumstances of their departure from Qwest. The dispute with Kraemer may also revolve around the circumstances of his departure, if he does indeed leave Qwest either voluntarily or following termination. Alternatively, the dispute over these provisions of the Non–Qualified Stock Option Agreement may be rendered moot in Kraemer's situation if he remains employed by Qwest for more than five years. Additionally, Qwest has not alleged Kraemer has made any demand for the full or partial vesting of the stock options other than his refusal to waive certain rights under the agreement as a condition of continued employment. As such, a pending dispute between Qwest and Kraemer over these stock options is only speculative at this time.

*Runyon* also held the district court may assess whether the declaratory judgment action is being used merely for purposes of procedural fencing or a race to *res judicata. Runyon,* 53 F.3d at 1170. Similar to the facts in *Runyon,* here Qwest was put on notice of Thomas' and Maher's claims to the stock options in question through their repeated inquiries and the demand letter sent to Qwest by counsel for Thomas in Ohio. Qwest was given a date by which to resolve the issue in that demand letter. Counsel for Qwest repeatedly delayed its response to the demand letter despite repeated contacts from Thomas' counsel in Ohio, and finally voiced its response to Thomas by filing this declaratory judgment action. After Thomas and Maher filed their state claims for breach of contract in the Ohio state court, Qwest removed that case to federal court presumably to avoid friction between this court and the Ohio state court. The timing of these events and the motion to remove by

Qwest suggest it is using the present case for procedural fencing to litigate the stock option claims in Colorado as opposed to in Ohio where Thomas and Maher in this case have joined to sue Qwest in state court. This case thereby reverses the stance of the parties and makes litigating the claims more burdensome on Thomas and Maher by requiring them to travel to Colorado to participate in these proceedings. Qwest, which owns substantial holdings in Ohio and conducts a large portion of its business there, claims the case is better litigated here where the majority of the witnesses and relevant documents are located. (Pl.'s Resp. at 15–16.) It does not, however, specify what documents are located here nor the identity of the witnesses who would be burdened by travel to Ohio in the manner that Defendants would be by travel to Colorado.

The underlying claims revolve around breach of contracts, specifically the Continuity Agreements and the Non–Qualified Stock Options between the Defendants, LCI, and Qwest respectively. While both documents have been filed in this court as exhibits appended to the parties' motions, they could just as easily be filed with the state or federal courts in Ohio. Additionally, all the claims appear to involve the interpretation of contracts that contain a merger clause and choice of law provisions requiring interpretation under New York or Delaware state law. Without knowing the identity of these witnesses and the necessity of their testimony on record before me, it appears the burden would be greater on Thomas and Maher who would be required to travel to Colorado. Under the *Runyon* factors, I find Qwest has engaged in procedural fencing in bringing this declaratory judgment action in Colorado.

Inherent in the analysis of possible friction between state and federal courts created by this case is acknowledgment of Qwest's motion to remove the case pending in Ohio state court to federal district court in the Southern District of Ohio. (Pl.'s Resp. ¶ 32, at 9.) Thomas and Maher have moved to remand the Ohio case to state court pursuant to the forum selection clause in the Continuity Agreements. (Def.'s Reply Br. at 2.) As discussed above, the removal to federal court in Ohio may be indicative of Qwest's attempt to eliminate another reason for this court to dismiss the present action. Significant precedent exists that the federal court should dismiss an action for declaratory judgment when a pending state court case will resolve the same issues. Indeed, these were the circumstances in *Wilton* where the Court restated the reason for staying or dismissing as a means of limiting friction between state and federal courts. *Wilton*, 515 U.S. at 282, 115 S.Ct. 2137 (citing *Brillhart*, 316 U.S. at 495, 62 S.Ct. 1173). Thus Qwest's removal to federal court in Ohio while simultaneously arguing this case should proceed in Colorado weakens the argument that this court should dismiss to avoid such friction.

In *Runyon*, the district court refused jurisdiction in favor of more effective alternative remedies because the same issues were involved in the pending state proceedings. *Runyon*, 53 F.3d at 1169. Similarly, given the appearance of all of the interested parties before the Ohio court and their consent to jurisdiction therein, the ability of that forum to address liability under all of the contracts at issue as well as any damages to which the parties may be entitled, litigation of the underlying dispute as a breach of contract claim in the Ohio forum is appropriate.

By amending its complaint, Qwest now adds a third Defendant to this declaratory judgment action in an attempt to sway the weight of the final *Runyon* factor in its favor. As Kraemer is not a resident of Ohio and has not voluntarily joined the suit with Thomas and Maher, the Ohio suit will not address any dispute between Qwest and Kraemer. Qwest therefore reasserts the case is better heard in Colorado where all three Defendants are being hailed before the court to decide their rights to stock options under the Non–Qualified Stock Option Agreement. This assertion

is hollow for several reasons. First, as pointed out earlier, the record shows the dispute Qwest claims to have with Kraemer is not yet ripe for litigation. Second, the contractual interpretation Qwest made in the situation of Thomas and Maher is unlikely to be at the center of the dispute with Kraemer should that situation ever proceed to litigation.

The amendment of the complaint in this action to include a Defendant who is only remotely related to the original dispute, with unclear jurisdictional ties to Colorado, over an ongoing disagreement that is not yet ripe, indicates additional procedural fencing on Qwest's part, strengthening the analysis described earlier against Qwest in further support of Thomas' Motion to Dismiss this declaratory judgment action.

### V. *Conclusion.*

Thomas has moved to dismiss Qwest's claim for declaratory judgment to ownership of stock options held by Qwest and allegedly owed to Thomas and Maher, former executives of Qwest. Although Maher has not been served and has therefore not responded, the record thus far indicates that this court has personal jurisdiction over both of the originally named Defendants based on minimum contacts analysis. Further, venue is appropriate here given that the decision to withhold stock options in dispute was made at Qwest headquarters in Denver. As Kraemer's current employment situation is not analogous to that of the original Defendants, it is questionable Qwest's dispute with him has ripened to a point at which a claim for relief can be made, and his ties to Colorado remain unclear, his addition to the original suit is inappropriate.

The Court's interpretation of the Declaratory Judgment Act in *Wilton* makes it clear there is no compulsion to exercise jurisdiction in this case. It provides wide discretion to assess the appropriate forum given another pending suit between the parties. The factors articulated in *Brillhart* and expounded in *Runyon* favor dismissal of the present action and retention

of the pending proceedings in Ohio. Accordingly,

IT IS ORDERED THAT Defendant Thomas' Motion to dismiss is GRANTED;

IT IS FURTHER ORDERED THAT this case is DISMISSED with each party to pay his or its own costs.