**UNITED STATES COURT OF APPEALS**   **Filed 6/28/96**
**Tenth Circuit**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80294**
**(303) 844-3157**

| | |
|---|---|
| **Patrick J.  Fisher, Jr.** | **Elisabeth A. Shumaker** |
| **Clerk** | **Chief Deputy Clerk** |

June 28, 1996

**TO:** ALL RECIPIENTS OF THE CAPTIONED OPINION

**RE:** 95-1425 SEC v. Knowles
   June 20, 1996 by The Honorable Michael R. Murphy

   Please be advised of the following correction to the captioned decision:

   Due to formatting problems, the previously filed opinion is withdrawn and the accompanying opinion substituted.  The content of the opinion has not changed.

   Please discard existing copies of the opinion and substitute the corrected version.

   Very truly yours,

   Patrick Fisher, Clerk

   Beth Morris
   Deputy Clerk

encl.

PUBLISH

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

In the Matter of an Application
to Enforce Administrative Subpoenas
Duces Tecum of the
SECURITIES AND EXCHANGE
COMMISSION,

        Applicant-Appellee,

v.

GAYE B. KNOWLES,

        Respondent-Appellant.

No. 95-1425

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 95-B-2036)

Raymond L. Robin, Olle, Macaulay & Zorrilla, Miami, Florida, (David W. Stark, Amy J. Griffin, Otten, Johnson, Robinson, Neff & Ragonetti, P.C., Denver, Colorado, with him on the briefs), for Respondent-Appellant.

Robert M. Fusfeld, Securities and Exchange Commission, Denver, Colorado, (Simon M. Lorne, General Counsel, Jacob H. Stillman, Associate General Counsel, Katherine B. Gresham, Assistant General Counsel, Catherine A.

Broderick, Counsel to the Assistant General Counsel, Securities and Exchange Commission, Washington, D.C., Paul Gonson, Solicitor, Of Counsel, on the brief), for Applicant-Appellee.

---

Before **SEYMOUR, BRORBY,** and **MURPHY,** Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

This case arises out of the enforcement by the district court against the appellant, a foreign national, of two administrative subpoenas duces tecum issued by the Securities and Exchange Commission. The appellant argues that the district court lacked personal jurisdiction to enforce the subpoenas. The district court held that it did not need personal jurisdiction over the appellant to do so.

The question presented is whether the appellant has the requisite minimum contacts to justify the district court's exercise of personal jurisdiction over him. This court holds that he does and that the district court properly enforced the subpoenas.

## I. BACKGROUND AND PROCEDURAL SETTING

On June 14, 1995, and again on June 30, 1995, the Securities and Exchange Commission (the "SEC") issued administrative subpoenas duces tecum in the name of the appellant, Gaye B. Knowles. The SEC served Knowles with the first subpoena by hand at LaGuardia Airport in New York City. It later served the

second on Knowles's counsel in Miami, Florida.  These subpoenas were issued in connection with the Formal Order of Investigation in the nonpublic investigation conducted by the SEC out of its Denver, Colorado, office, *In the Matter of the Rockies Fund, Inc., Redwood Microcap Fund, Inc., and Combined Penny Stock Fund, Inc., et al.*[1]  The SEC issued these subpoenas pursuant to its authority under 15 U.S.C. §§ 77s(b), 78u(b), and 80a-41(b).

Knowles is presently a Bahamian citizen and resident and has been so since 1951.  He is an independent investment consultant and, at the times the subpoenas were served on him, was also the president of two Bahamian companies, Global Petrol Trading and Swiss EuroFund, Inc.[2]  In the investigation, the SEC sought to determine whether bank accounts in the names of these two companies were used to bribe brokers in the United States to sell certain stock of American companies in violation of federal securities laws.  The first subpoena directed Knowles to appear at a deposition and to produce certain personal documents and documents relating to the bank accounts of Global Petrol Trading.  The second subpoena directed the same and called for Knowles to produce documents relating to the

---

[1]The Formal Order of Investigation is not a part of the record in this case; the SEC claims that it is a nonpublic document.  The Formal Order was available to the district court for *in camera* inspection, but its scope and contents are in no way related to the issues here on appeal.

[2]Since that time, Knowles has been advised that his employment with Global Petrol Trading and Swiss EuroFund, Inc., has been terminated.  [App. at 66]

bank accounts of Swiss EuroFund, Inc.

In response to the subpoenas, Knowles appeared for deposition in Miami, Florida, on July 12, 1995. Knowles produced certain corporate documents pursuant to the subpoenas but objected to producing monthly banking statements and other banking documents of the two companies. In order to enforce the subpoenas, the SEC applied to the district court in the judicial district where it is conducting the investigation, as authorized in 15 U.S.C. §§ 77v(b), 78u(c), and 80a-41(c).

The SEC filed an Ex Parte Application for an Order to Show Cause and Application for an Order Compelling Compliance with Administrative Subpoenas Duces Tecum. The United States District Court for the District of Colorado subsequently issued an Order to Show Cause. Thereafter, the SEC served Knowles with the Order to Show Cause outside his home in Nassau, Bahamas. Knowles responded to the Order to Show Cause and moved the district court to dismiss the SEC's application for lack of personal jurisdiction over him.

In an Amended Memorandum Order and Opinion, the district court held that it did not need personal jurisdiction over Knowles in order to enforce the subpoenas against him. It held, instead, that judicial enforcement of an administrative subpoena may be had where the agency can show that: (1) the inquiry is conducted pursuant to a lawfully authorized, legitimate purpose; (2) it

-4-

is reasonably relevant to an investigation which the agency has authority to conduct; and (3) all administrative prerequisites have been met. *See United States v. Powell*, 379 U.S. 48, 57-58 (1964); *SEC v. Blackfoot Bituminous, Inc.*, 622 F.2d 512, 514 (10th Cir.), *cert. denied*, 449 U.S. 955 (1980). The district court determined that the SEC met this three-pronged burden and that Knowles had adduced no evidence to the contrary. It therefore ordered Knowles to comply with the subpoenas within ten days. This court subsequently granted Knowles's Motion to Stay the Amended Memorandum Order and Opinion pending appeal. This appeal followed.

On appeal, Knowles argues that the district court erred when it determined it did not need personal jurisdiction over him in order to enforce the subpoenas. He also argues that the district court could not properly exercise jurisdiction over him because of his lack of personal contacts with the United States. In response, the SEC maintains that the district court had personal jurisdiction over Knowles based upon sufficient minimum contacts with the United States in relation to: (1) the subpoenas; (2) the matters under investigation by the SEC; and (3) his general business. In the alternative, the SEC argues that the minimum contacts analysis is not required because the district court had personal jurisdiction over Knowles based upon the SEC's service of the subpoenas on Knowles within the territorial limits of the United States. The SEC does not argue that personal jurisdiction is

not required in order to enforce the subpoenas, as the district court held.

## II.  JURISDICTION

This court has jurisdiction to review the Amended Memorandum Order and Opinion under 28 U.S.C. § 1291.  The district court's ruling on personal jurisdiction involves a question of law that is reviewed *de novo*.  *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990), *cert. denied*, 498 U.S. 1068 (1991).

The issue here is a narrow one:  whether the district court had personal jurisdiction over Knowles to enforce the administrative subpoenas duces tecum. The court notes at the outset that Knowles does not contend the SEC lacked the authority to issue the subpoenas under the tripartite test set out in *Powell* and *Blackfoot*.  He does not challenge the methods or places of service of process employed in serving either the subpoenas or the Order to Show Cause.  Moreover, Knowles does not seriously contend that he lacked capacity to produce corporate records in his possession or that the SEC could only secure production of the documents through service of subpoenas on Knowles's former corporate employers.[3]  Therefore, we do not address these issues and limit this opinion to

---

[3]Over the course of this enforcement action, Knowles has hinted at possible problems or objections he may have with the scope of the subpoenas.  For instance, at his deposition, Knowles conceded that some of the documents requested in the subpoenas were in his possession, control, and custody and would be found at his residence, which also functioned as his office.  But Knowles has also noted that since he was terminated as president, he has been instructed to return all the documents belonging to Global Petrol Trading and Swiss EuroFund,

the question of the jurisdiction of the district court, based upon the extraterritorial

service of the Order to Show Cause, to enforce the SEC's subpoenas duces tecum

---

Inc. Furthermore, Knowles's counsel stated at Knowles's deposition that the objection to the request for corporate documents was based on the fact that these were "private documents in a corporation." He explained the subpoenas reflected that the corporations were not under investigation and that he thus believed the corporations were "outside the scope of the subpoena[s] issued by the SEC to compel documents from a Bahamian bank." He therefore asserted a general privacy interest in "proprietary private information." Knowles also indicated that he chose not to produce the requested documents because he was not a signatory on the bank accounts requested in the subpoenas and thus had no control over them.

Knowles, however, indicated in his testimony that some of the subpoenaed banking documents of which he was not the signatory were in his possession. He did not produce these documents. In his appellate filings before this court, Knowles does not elaborate on either the documents that are still in his possession or the "privilege" asserted in his deposition colloquy. Instead, Knowles only employs the alleged differences between his personal capacity and the corporate capacities of both Global Petrol Trading and Swiss EuroFund, Inc., in order to make the argument that the corporate contacts are not his own personal contacts. We discuss this issue below.

Furthermore, the district court did not address the issue of what Knowles must produce or his general claims of corporate "privilege." Although Knowles's "privilege" arguments are somewhat oblique, as we discern them they fail. We note that a corporation possesses no right to exercise a privilege against self-incrimination and that a corporate officer cannot refuse to produce corporate documents on the ground of self-incrimination. *United States v. Rice*, 52 F.3d 843, 846 (10th Cir. 1995); *United States v. Hansen Niederhauser Co.*, 522 F.2d 1037, 1039 (10th Cir. 1975). To the extent that Knowles asserts that the SEC lacks the power to require production of documents stored outside the territorial boundaries of the United States, this issue has also been decided against his position. *Commodity Futures Trading Comm'n v. Nahas*, 738 F.2d 487, 492 & n.11 (D.C. Cir. 1984) (citing cases).

-7-

against Knowles.[4]

### A. Minimum Contacts

Under the due process clause of the Fifth Amendment, personal jurisdiction over a party does not exist unless that party has sufficient "minimum contacts" with the jurisdiction. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).[5] The exercise of jurisdiction must not "offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Furthermore, the party's activities within the jurisdiction must render it

---

[4]Nor do we consider the issue of whether the district court acquired personal jurisdiction over Knowles as a result of his attendance at the scheduled deposition pursuant to the subpoenas. The SEC does not contend that Knowles's attendance and production of some responsive documents waived his objections to the personal jurisdiction of the district court to enforce the subpoenas. Therefore, this court will not address the issue of waiver.

[5]The SEC argues, in the alternative, that the minimum contacts analysis of *International Shoe* is unnecessary because the SEC served the administrative subpoenas on Knowles within the boundaries of the United States. *See Burnham v. Superior Court*, 495 U.S. 604 (1990). Although language in decisions of other circuits arguably provides some support for the SEC's theory, we have no need to consider the issue and whether *Burnham*, which involved service of a summons in the forum state, controls. *See Mark Rich & Co. v. United States* (*In re Mark Rich & Co.*), 707 F.2d 663, 668 (2d Cir.), *cert. denied*, 463 U.S. 1215 (1983); *FTC v. Compagnie de Saint-Gobain-Pont-a-Mousson*, 636 F.2d 1300, 1324 (D.C. Cir. 1980). Therefore, we express no opinion on whether an administrative agency, which must apply to a court in order to enforce its subpoenas, may itself secure personal jurisdiction over a person solely through service of subpoenas within the United States and then may rely upon that jurisdiction to enforce compliance with those subpoenas in a district court. Rather, we hold that Knowles independently has sufficient minimum contacts with the United States to support the district court's exercise of personal jurisdiction enforcing the subpoenas.

foreseeable that the party should reasonably anticipate being haled into the forum court. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Under Federal Rule of Civil Procedure 4(k)(2), the service of a summons with respect to a claim under federal law in which Congress has authorized worldwide service establishes personal jurisdiction over the defendant, subject to constitutional limits. The Securities Exchange Act permits the exercise of personal jurisdiction to the limits of the Due Process Clause of the Fifth Amendment. *SEC v. Unifund SAL*, 910 F.2d 1028, 1033 (2d Cir. 1990). Congress has provided for worldwide service of process in cases of the enforcement of subpoenas issued by the SEC. 15 U.S.C. § 77v(a). The language of § 77v(a) authorizes the service of process on a defendant in any district "of which the defendant is an inhabitant or wherever the defendant may be found." *Id.*; *see also* 15 U.S.C. §§ 78u(c), 80a-41(c) (employing language to permit service "wherever [the defendant] may be found"); *accord* 15 U.S.C. § 78aa. Under § 80a-41(c), the SEC is entitled to invoke the aid of the district court in which it is conducting its investigation.

Knowles was served by the SEC with the Order to Show Cause outside his home in Nassau, Bahamas. When the personal jurisdiction of a federal court is invoked based upon a federal statute providing for extraterritorial service, the relevant inquiry is whether the respondent has had sufficient minimum contacts

with the United States. *See, e.g.*, *Busch v. Buchman, Buchman & O'Brien*, 11 F.3d 1255, 1258 (5th Cir. 1994) (worldwide service under 15 U.S.C. § 78aa); *accord United Liberty Life Ins. v. Ryan*, 985 F.2d 1320, 1330 (6th Cir. 1993); *cf. United Elec. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1085 (1st Cir. 1992) (nationwide service under 29 U.S.C. § 1132(e)(2)); *Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1414-16 (9th Cir. 1989) (worldwide service under 15 U.S.C. § 22). Specific contacts with the district in which enforcement is sought, in this case Colorado, are unnecessary.

The question then before this court is whether Knowles has sufficient minimum contacts with the United States to enable the district court to exercise personal jurisdiction over him consistent with the Due Process Clause of the Fifth Amendment. We thus look to the constitutional sufficiency of the contacts with the United States which Knowles concedes. Knowles acknowledges the following contacts: (1) that he visited the United States "on a number of occasions" for purposes of meeting with investment clients; (2) that during his visits to Florida to meet with the sole shareholder[6] of Global Petrol Trading and Swiss EuroFund, Inc., "he signed a handful of letters and checks"; and (3) he opened a brokerage

---

[6]The SEC's affidavit evidence establishes that there is indeed only one shareholder of Global Petrol Trading and Swiss EuroFund, Inc. Knowles refers only to "the shareholder" of these corporations. Employing the SEC's term "sole" thus clarifies the issue and is not inconsistent with either the import or the phraseology of Knowles's concession.

-10-

trading account for Global Petrol Trading during one of his trips to Florida.

Here the SEC has produced affidavits outlining more extensive contacts between Knowles and the United States, mainly in the forms of active trading through additional American brokerage accounts and the wiring of proceeds from stock sales to Bahamian banks. Knowles, however, generally contests these alleged contacts. He argues that they are based on hearsay and expert opinions concerning securities industry practices and handwriting identification which are without foundation. He contends that his actions on behalf of Global Petrol Trading and Swiss EuroFund, Inc., are limited to those he has admitted.

The district court did not resolve these disputed jurisdictional facts. As a result, this court is hesitant to consider the evidence of contacts presented by the SEC. Based only on the contacts Knowles admits, however, we hold that the district court does have personal jurisdiction over him.

## B. Analysis

The source of a federal district court's jurisdiction may be twofold: specific and general jurisdiction. Specific jurisdiction may be exercised where the defendant has "purposefully directed" its activities toward the forum jurisdiction and where the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum. *Burger King*, 471 U.S. at 472; *Helicopteros Nacionales*, 466 U.S. at 414 & n.8. A nonresident defendant

may be subjected to the forum's general jurisdiction even where the alleged activities of the defendant upon which the claims are based are unrelated to his contacts with the forum. *Doe*, 974 F.2d at 147. The forum court's general jurisdiction may be invoked over the defendant on any matter if the defendant's unrelated contacts are sufficiently "'continuous and systematic'" that the exercise of jurisdiction is "'reasonable and just.'" *Helicopteros Nacionales*, 466 U.S. at 415 (quoting *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 438, 445 (1952)). Our focus here is on specific jurisdiction.

In this case, all of Knowles's admitted contacts with the United States concern his activities as the former president of Global Petrol Trading and Swiss EuroFund, Inc. Those contacts involve activities that are the very source of the SEC's interest in the two corporations. The underlying investigation and this subpoena enforcement action arise out of Knowles's contacts with the United States and thus support the exercise of specific jurisdiction in order to secure enforcement.

Knowles, however, contends that the contacts of the two corporations cannot be factored into the analysis of whether he has minimum contacts with the United States. His argument is that the jurisdiction of the district court based upon these corporate contacts does not extend to him. Knowles is mistaken. As the Supreme Court held in *Calder v. Jones*, employees of a corporation that is

subject to the personal jurisdiction of the courts of the forum may themselves be subject to jurisdiction if those employees were primary participants in the activities forming the basis of jurisdiction over the corporation. *Calder v. Jones*, 465 U.S. 783, 790 (1984). That the subpoenas were served on Knowles without explicit reference to his former capacity as president of the two corporations has no bearing on whether the district court has jurisdiction over him with regard to the corporate activities in which Knowles was a primary participant. Personal jurisdiction over him would extend at least as far as matters relating to the activities of the two corporations in the forum in which he was a primary participant. *See Calder*, 465 U.S. at 790; *Perkins*, 342 U.S. at 445-46.

Knowles has purposefully directed his activities on behalf of Global Petrol Trading and Swiss EuroFund, Inc., toward the United States. *See Burger King*, 471 U.S. at 472. Moreover, those activities are directly related to matters in the underlying SEC investigation. As Knowles concedes, he was the individual who took the actions on behalf of the two corporations that are the basis of jurisdiction. Knowles was then a primary participant in these activities. *See Calder*, 465 U.S. at 789-90. Based upon his admitted contacts, the exercise of specific jurisdiction over him is reasonable and just and satisfies traditional notions of fair play. *See Perkins*, 342 U.S. at 445; *International Shoe*, 326 U.S. at 316.

Even a single purposeful contact may be sufficient to meet the minimum contacts standard when the underlying proceeding is directly related to that contact. *See McGee v. International Life Ins. Co.*, 355 U.S. 220, 223 (1957). Those contacts admitted by Knowles involve an ongoing business relationship and a brokerage account. They are sufficient to support the exercise of specific personal jurisdiction because the underlying SEC investigation concerns these admitted contacts. *See SEC v. Gilbert*, 82 F.R.D. 723, 725-26 (S.D.N.Y. 1979) (exercising personal jurisdiction over a Swiss bank whose only contacts with the United States were four brokerage accounts maintained at three securities dealers); *see also Unifund SAL*, 910 F.2d at 1033 (upholding personal jurisdiction over foreign investors alleged to have conducted insider trading in purchasing securities of a United States corporation traded on a United States exchange); *Perez-Rubio v. Wyckoff*, 718 F. Supp. 217, 229-31 (S.D.N.Y. 1989) (upholding personal jurisdiction over a foreign investment house and its individual officers because the purpose of the corporation was to purchase United States securities on United States exchanges, in part for United States citizens).

Knowles's contacts involve trading activities on behalf of an American shareholder of the corporations that employed him as president, through an American brokerage firm, that were "purposefully directed" toward the United States. *See Burger King*, 471 U.S. at 472. Moreover, they represent a deliberate

-14-

affiliation with the forum that renders foreseeable the possibility of being haled into court in the United States at least as to those specific contacts. *See id.* at 478-82; *World-Wide Volkswagen*, 444 U.S. at 297. The actions Knowles took on behalf of Global Petrol Trading and Swiss EuroFund, Inc., indicate that Knowles, through the corporations, purposefully availed himself of the benefits and protections of the laws of the United States. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

From these contacts, Knowles and the two corporations enjoyed the privileges of conducting activities within the United States and he could reasonably anticipate being subject to the jurisdiction of the United States. *See World-Wide Volkswagen*, 444 U.S. at 297. Knowles's continuing investment contacts with United States citizens, companies, and brokerage accounts were not random, fortuitous, or attenuated. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *World-Wide Volkswagen*, 444 U.S. at 299. Rather, they were purposeful, continuous, and systematic. *See Burger King*, 471 U.S. at 472; *Perkins*, 342 U.S. at 446-48. The district court's exercise of specific personal jurisdiction over him thus comported with "'traditional notions of fair play and substantial justice.'" *See International Shoe*, 326 U.S. at 316 (quoting *Milliken*, 311 U.S. at 463).

For the foregoing reasons, the district court's order to Knowles to comply with the SEC's administrative subpoenas duces tecum is AFFIRMED.