Barbara W. WISE; and Remedies for Reading Disabilities, Inc., a Colorado Corporation, Plaintiff,

v.

Patricia C. LINDAMOOD; and Linda-mood–Bell Learning Processes, Inc., a California Corporation, Defendant.

No. CIV.A. 98–B–1645.

United States District Court, D. Colorado.

Sept. 28, 1999.

David Mastbaum, Arthur H. Travers, David Mastbaum Law Office, Boulder, CO, for Plaintiff.

Christopher W. Blakemore, Hurth, Yeager & Sisk, Boulder, CO, James Edward Houpt, Kimberly J. Mueller, Norman Carter Hile, Orrick, Herrington & Sutcliff, LLP, Sacramento, CA, for Defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Defendants move to dismiss this action pursuant to Rule 12(b)(2) for lack of personal jurisdiction, and pursuant to 28 U.S.C. § 1391(b) for improper venue. Alternatively, Defendants move to transfer this action pursuant to 28 U.S.C. § 1404. The motions are fully briefed. For the reasons set forth below, I deny Defendant's motions.

### I.

Patricia Lindamood (Ms. Lindamood) is a resident of southern California. Ms. Lindamood and her late husband authored programs to develop the sensory cognitive processes that underlie reading, spelling, language comprehension, math, and visual motor skills. These programs are included in a text originally written by Ms. Lindamood and her late husband and subsequently revised by Ms. Lindamood with the support of others. Ms. Lindamood owns the copyright in the text, and claims trademark protection for her name.

Lindamood–Bell is a California corporation headquartered in San Luis Obispo. One of the purposes of Lindamood–Bell, of which Ms. Lindamood is a director, "is to ensure that [Ms. Lindamood's] research-based programs ... are available on a broader scale." *Defendants' Motion to Dismiss* at Ex. A, ¶ 12. Toward that end, Ms. Lindamood permits Lindamood–Bell to use her copyrighted materials and trademark in educational programs.

Barbara Wise (Ms. Wise) is a resident of Boulder, Colorado who conducts seminars for teachers and other professionals who work with students with reading disabilities. Each seminar participant receives a manual authored by Ms. Wise entitled *Linguistic Remedies for Reading Disabilities (Linguistic Remedies )*. Remedies for Reading Disabilities, Inc., of which Ms. Wise is the sole shareholder, director, and President, holds the copyright to *Linguistic Remedies*. *Linguistic Remedies* references Ms. Lindamood and her programs.

Beginning in February 1998, Ms. Lindamood commenced communications with Ms. Wise in which she conveyed her belief that *Linguistic Remedies* infringed her copyright and trademark. In the course of those communications, attorneys for Ms. Lindamood sent two letters to Ms. Wise's attorneys. Plaintiffs filed the complaint in this action on July 31, 1998 seeking a declaratory judgment that *Linguistic Remedies* does not infringe Ms. Lindamood's rights.

## II.

### A.

■ Plaintiffs bear the burden of establishing personal jurisdiction over the defendants. *See Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1075 (10th Cir.1995). When the issue is raised before trial and decided on the basis of affidavits and other written materials, a plaintiff need only make a prima facie showing. *See id.* The burden on the plaintiff is light. *See Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir.1995). I may consider matters outside the pleadings. *See Schramm v. Oakes,* 352 F.2d 143, 149 (10th Cir.1965). If the parties present conflicting affidavits, I must resolve all disputed facts and draw all reasonable inferences in the plaintiff's favor. *See Behagen v. Amateur Basketball Ass'n of U.S.A.,* 744 F.2d 731, 733 (10th Cir.1984), cert. denied, 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985). However, "only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be ac-cepted as true." *See Wenz,* 55 F.3d at 1505.

■ The determination of jurisdiction is a two part inquiry. First, I must determine whether there is a basis for jurisdiction under Colorado's long-arm statute. *See* C.R.S. § 13–1–124. Colorado's long-arm statute subjects a defendant to personal jurisdiction for various enumerated acts including the transaction of any business within the state of Colorado. C.R.S. § 13–1–124(1) (Supp.1994). Second, I must determine whether the exercise of jurisdiction violates principles of Due Process under the United States Constitution. *See Custom Vinyl Compounding Inc. v. Bushart & Associates, Inc.,* 810 F.Supp. 285, 287 (D.Colo.1992). Because "the Colorado legislature [in enacting the long-arm statute] intended to extend the jurisdiction of Colorado courts to the fullest extent permitted by the due process clause of the United States Constitution." *Behagen v. Amateur Basketball Association of the United States of America,* 744 F.2d 731, 733 (10th Cir.1984) (quoting *Waterval v. District Court,* 620 P.2d 5, 8 (Colo.1980), cert. denied, 452 U.S. 960, 101 S.Ct. 3108, 69 L.Ed.2d 971 (1981)); *see Safari Outfitters of Denver v. Superior Court,* 167 Colo. 456, 448 P.2d 783 (1968) (Colorado's long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process), the analysis reduces to whether the exercise of personal jurisdiction on the basis of Defendants' business contacts is consistent with Due Process. *See, e.g., Behagen,* 744 F.2d at 733; *Qwest Communications International, Inc. v. Thomas,* 52 F.Supp.2d 1200, 1204 (D.Colo.1999).

■ Personal jurisdiction under the Due Process Clause may be either general or specific. General jurisdiction arises from a defendant's continuous and systematic activity in the forum state. *See Rambo v. American Southern Ins. Co.,* 839 F.2d 1415, 1418 (10th Cir.1988). The activity cannot be "random," "fortuitous," or "attenuated." *Burger King v. Rudzewicz,*

471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)). Rather, the defendant must "purposefully avail itself of the privilege of conducting activities within the forum State," *id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)), thereby invoking the benefits and protections of the forum state's laws, but also submitting to the burdens of litigation in that forum. *Id.* A state has general jurisdiction if a defendant has created "a 'substantial connection' with the forum State," *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), such that it "should reasonably anticipate being haled into court there." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

Specific jurisdiction, by contrast, arises in the absence of such general activity and is predicated upon a defendant's minimum contacts with the forum which give rise to the cause of action. *Kennedy*, 919 F.2d at 128 n. 2. The touchstone inquiry is whether "the defendant has 'purposefully directed' its activities toward the forum jurisdiction and [whether] the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum." *In re Application to Enforce Administrative Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413, 418 (10th Cir.1996) (quoting *Burger King*, 471 U.S. at 472, 105 S.Ct. 2174). "Even a single purposeful contact may be sufficient ... when the underlying proceeding is directly related to that contact." *Id.* at 419. *See McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). Nevertheless, "a defendant will not be haled into a jurisdiction solely as a result of ... the 'unilateral activity of another party or third person.'" *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).

■ Even if a defendant's contacts satisfy either test, the exercise of jurisdiction must not "offend traditional notions of fair play and substantial justice.'" *Trierweiler v. Croxton and Trench Holding Corporation*, 90 F.3d 1523, 1533 (10th Cir.1996) (quoting *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158). In deciding if an action so offends, factors to be considered are (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *See Asahi Metal Industry Co. v. Superior Court of California, Solano County*, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *OMI Holdings, Inc. v. Royal Insurance Co. of Canada*, 149 F.3d 1086 (10th Cir.1998). The strength of these factors sometimes serves to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. *See Burger King*, 471 U.S. at 477, 105 S.Ct. 2174; *Ticketmaster–New York, Inc. v. Joseph M. Alioto*, 26 F.3d 201, 210 (1st Cir.1994). Conversely, the factors may be so weak that even though minimum contacts are present, subjecting the defendant to jurisdiction in that forum would offend due process. *See Burger King*, 471 U.S. at 477, 105 S.Ct. 2174; *Ticketmaster–New York*, 26 F.3d at 210. Nevertheless, "[t]he Due Process Clause may not [ ] be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." *Burger King*, 471 U.S. at 474, 105 S.Ct. 2174.

### B.

■ A party moving to transfer a case bears the burden of showing that the existing forum is inconvenient. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir.1991). Among the factors to be considered are:

the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler*, 928 F.2d at 1516 (quoting *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir.1967)). In deciding motions for transfer of venue, I must give an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). Cases may be transferred to prevent waste of time, energy, and money, unnecessary inconvenience, and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *Frontier Airlines, Inc. Retirement Plan for Pilots v. Security Pacific Nat. Bk., N.A.*, 696 F.Supp. 1403, 1406 (D.Colo.1988). Unless the balance of considerations is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed. *William A. Smith Contracting Co., Inc. v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir. 1972).

### III.

#### A.

##### 1.

■ Defendants first argue that Plaintiffs cannot establish specific personal jurisdiction over them. Specifically, Defendants contend that Plaintiffs cannot establish that their cause of action is based upon the defendant's contacts with Colorado. Plaintiffs respond that the two cease and desist letters sent by Ms. Lindamood's attorney to Plaintiffs' attorney evidence such a nexus and that the exercise of jurisdiction is proper. I disagree.

The *dispute* in this case results from the alleged tortious conduct of the plaintiff. *See Douglas Furniture Co. of California, Inc. v. Wood Dimensions, Inc.*, 963 F.Supp. 899, 902 (C.D.Cal.1997). It does not result from the two cease and desist letters. *See Ham v. La Cienega Music Company*, 4 F.3d 413, 416 (5th Cir.1993) (in an action for a declaratory judgment regarding whether plaintiff's actions infringed a copyright, holding that cease and desist letter does not relate to the merits of the question before the court). Consequently, permitting the mailing of cease and desist letters to trigger personal jurisdiction in this case would effectively permit Defendants to be "haled into a jurisdiction solely as a result of . . . the 'unilateral activity of another party or third person.'" *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174 (quoting *Helicopteros*, 466 U.S. at 417, 104 S.Ct. 1868).

In addition, to permit this suit to go forward on the basis of two cease and desist letters would not "comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476, 105 S.Ct. 2174 (quoting *International Shoe*, 326 U.S. at 320, 66 S.Ct. 154). As the Federal Circuit has stated in similar circumstances, an individual "should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement." *Red Wing Shoe Co. v. Hockerson–Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed.Cir.1998). To hold otherwise would decrease the likelihood of settlements in cases of alleged infringement because the party that believes its exclusive trademark, copyright, or patent is being infringed will not first seek to settle a dispute through less adversarial channels than the court system. *See Med–Tec, Inc. v. Kostich*, 980 F.Supp. 1315, 1329 (N.D.Iowa 1997). Instead, such a party will first file a lawsuit in the forum of its choice. Such an outcome is contrary

to "the interstate judicial system's interest in obtaining the most efficient resolution of controversies." *See Asahi*, 480 U.S. at 113, 107 S.Ct. 1026.

The vast majority of courts to address this issue have reached the same conclusion. *See Red Wing*, 148 F.3d at 1360–61 (citing cases). *See also Med–Tec*, 980 F.Supp. at 1329; *Stairmaster Sports/Medical Products, Inc. v. Pacific Fitness Corp.*, 916 F.Supp. 1049 (W.D.Wash.1994); *Zumbro, Inc. v. California Natural Prods.*, 861 F.Supp. 773, 781 (D.Minn. 1994); *Database America, Inc. v. Bellsouth Advertising and Publishing Corp.*, 825 F.Supp. 1195, 1213 (D.N.J.1993); *BIB Mfg. Co. v. Dover Mfg. Co.*, 804 F.Supp. 1129, 1132–33 (E.D.Mo.1992); *KVH Industries, Inc. v. Moore*, 789 F.Supp. 69 (D.R.I. 1992). A few courts have found jurisdiction on the basis of multiple cease and desist letters, *see Meade Instruments Corp. v. Reddwarf Starware LLC*, 47 U.S.P.Q.2d 1157, 1159 (C.D.Cal.1998); *Bounty–Full Entertainment, Inc. v. Forever Blue Entertainment Group, Inc.*, 923 F.Supp. 950, 957 (S.D.Tex.1996); *Burbank Aeronautical Corp. II v. Aeronautical Development Corp.*, 16 U.S.P.Q.2d 1069 (C.D.Cal.1990); *Tandem Computers Inc. v. Yuter*, 1989 U.S. Dist. LEXIS 18384 (N.D.Cal.1989), or multiple letters and phone calls or facsimiles. *See Oki America, Inc. v. Tsakanikas*, 1993 WL 515860 (N.D.Cal.1993); *Edwards v. Pulitzer Publishing Co.*, 716 F.Supp. 438 (N.D.Cal. 1989). One court found personal jurisdiction on the basis of a single cease and desist letter. *See Dolco Packaging Corp. v. Creative Industries, Inc.*, 1 U.S.P.Q.2d 1586 (C.D.Cal.1986). *But see Douglas Furniture Co.*, 963 F.Supp. at 901 (refusing to follow *Dolco* in a case involving *two* cease and desist letters). However, all of these decisions reflecting the minority position are at least in tension with binding precedent from their circuits. *See Ham*, 4 F.3d at 416 (a cease and desist letter "does not support personal jurisdiction in Texas"); *Peterson v. Kennedy*, 771 F.2d 1244, 1261–62 (9th Cir.1985) (holding that a series of letters and phone calls into the forum state, without more, is insufficient to establish specific jurisdiction). For this reason, and because I do not find their reasoning persuasive, I apply the majority position.

Finally, although the Tenth Circuit held in *Burt v. Board of Regents*, 757 F.2d 242, 244–45 (10th Cir.1985) that sending letters to a person within a forum jurisdiction can be sufficient to establish personal jurisdiction within that jurisdiction, *Burt* involved letters that allegedly libeled the plaintiff. *Id. Burt* is thus distinguishable on its facts. In addition, it is not clear that *Burt* remains good law. The Supreme Court initially granted certiorari on the *Burt* decision, but later, without oral argument, "vacated" the "judgment" and remanded to the Tenth Circuit "with directions that it instruct the United States District Court for the District of Colorado to dismiss the complaint as moot." *Connolly v. Burt*, 475 U.S. 1063, 106 S.Ct. 1372, 89 L.Ed.2d 599 (1986). At least one court has interpreted the Supreme Court's action as vacating the grant of certiorari, *see, e.g., National Petroleum Marketing, Inc. v. Phoenix Fuel Co., Inc.*, 902 F.Supp. 1459, 1466 (D.Utah 1995), while others have treated it as vacating the Tenth Circuit's judgment. *See, e.g., Hoechst Celanese Corp. v. Nylon Engineering Resins, Inc.*, 896 F.Supp. 1190, 1195 (M.D.Fla.1995); *Traffas v. Bridge Capital Corporation*, 1990 WL 251740, *7 (D.Kan.); *Wright v. Xerox Corporation*, 882 F.Supp. 399, 405 (D.N.J.1995). Only one Tenth Circuit opinion has cited *Burt*, *see Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir.1995), but that opinion includes no mention of its subsequent history. *See id.* The court in *Far West* also seemingly concluded, as I do, that *Burt* applies solely to libel claims. *See Far West*, 46 F.3d at 1077–80; *National Petroleum Marketing*, 902 F.Supp. at 1466–67. Given this uncertainty, even if I were inclined to find that sending two letters to Plaintiffs' attorney in Colorado is sufficient to create specific personal jurisdiction, I would not rely on *Burt*. For the foregoing reasons, specific personal juris-

diction does not exist with respect to Defendants.

2.

a.

■ Lindamood–Bell argues that general personal jurisdiction does not exist with respect to it. Specifically, Lindamood–Bell claims that it does not have an office in Colorado, does not hold itself out as doing business in Colorado, and derives less than one percent of its income from Colorado sources. Lindamood–Bell concludes that general personal jurisdiction cannot be established under the factors identified in *Trierweiler*. *See Trierweiler*, 90 F.3d at 1533 ("In assessing contacts with a forum, courts have considered such factors as: (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation") (citing 4 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1069, at 348–55 (2d ed.1987)).

Plaintiffs respond that the *Trierweiler* factors weigh in favor of exercising general personal jurisdiction over Lindamood–Bell. Specifically, Plaintiffs contend that Lindamood–Bell's contacts with Colorado have been continuous and systematic because Lindamood–Bell (1) maintained an office in Denver during 1996, (2) operated a World Wide Web site that can be accessed by people in Colorado, (3) mailed solicitations for courses and products to residents of Colorado, (4) conducted programs in Colorado, (5) consummated four contracts with three Colorado school districts, and (6) sent the cease and desist letters to Plaintiffs.

As an initial matter, I note that the *Trierweiler* factors are neither exhaustive nor necessarily determinative of the general personal jurisdiction inquiry, as Defendants suggest. The Tenth Circuit employed the factors in *Trierweiler* as guides to the general personal jurisdiction inquiry. *See Trierweiler*, 90 F.3d at 1533 ("In assessing contacts with a forum, courts have considered *such factors as* . . .") (emphasis added) (citing 4 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1069). *See also* 4 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1069 at 348–49 (noting that personal jurisdiction has been found under myriad factors other than the ones specifically discussed). Instead, the dispositive inquiry is whether Defendants have enjoyed the "benefits and protections of the forum state's laws," *Burger King*, 471 U.S. at 474, 105 S.Ct. 2174, such that they "should reasonably anticipate being haled into court there." *Asahi*, 480 U.S. at 109, 107 S.Ct. 1026 (quoting *World-Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. 559).

I conclude that general personal jurisdiction exists with respect to Lindamood–Bell because Colorado law governed the four contracts with the three Colorado school districts. The contract with the Pueblo School District specifically stipulates that it is "governed by the laws of the state of Colorado." Because the three other contracts were for services, the services were performed in Colorado, and California had no relationship with the contracts other than that Defendants reside there, Colorado had the most significant relationship with the contracts. *See Wood Bros. Homes v. Walker Adjustment Bureau*, 198 Colo. 444, 601 P.2d 1369, 1372–73 (1979) (adopting the most significant relationship test from the *Restatement (Second) of Contracts* for conflict of laws questions and holding that the state where services agreed to in a service contract are to be performed is presumed to have the most significant relationship). Colorado law thus also applied to the contracts with the Jefferson County and Denver Public School Districts. Consequently, because Lindamood–Bell enjoyed the benefits and protections of Colorado's laws, it must now submit to the burdens of litigation in Colo-

rado. *See Burger King,* 471 U.S. at 474, 105 S.Ct. 2174.

I also note that Lindamood–Bell maintained an office in Denver. *See Plaintiff's Memorandum Brief In Response* at Ex. 3 (Dun & Bradstreet report dated September 30, 1996) *(Plaintiff's Response* ); *see also* F.R.E. 803(17); *Hamilton v. Accu–Tek.* 32 F.Supp.2d 47, 64, n. 11 (E.D.N.Y. 1998) (holding that Dun & Bradstreet report was admissible). Such a contact, standing alone, can be the basis for general personal jurisdiction. *See* 4 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1069 at 349 & n. 10 (listing cases in which the presence of an office was sufficient to establish general personal jurisdiction). *See also Trierweiler,* 90 F.3d at 1533 (citing this section of Wright et al.). Lindamood–Bell has also conducted both informational meetings, *see Plaintiffs' Response* at 15–16 and referenced exhibits, and courses/workshops in Colorado, *see Defendants' Reply* at 4, and mailed solicitations to Colorado residents that advertise its products, services, and courses/workshops. *See Defendants' Motion to Dismiss for Lack of Personal Jurisdiction* at 16; Ex. A, ¶ 15; Ex. C, ¶ 3; Ex. D, ¶ 2; Ex. F, ¶ 2 and appendices.

Finally, Lindamood–Bell also maintains an interactive World Wide Web site that advertises both its courses and products. <http://www.lblp.com (visited on September 22, 1999); *see Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1123–24 (W.D.Pa.1997) (defining "interactivity" as the exchange of information with a host computer and holding that a high degree of interactivity of a commercial nature can establish personal jurisdiction). Courts generally agree that although a "passive" or moderately "interactive" Web site alone is insufficient to confer general personal jurisdiction, *see, e.g., Hurley v. Cancun Playa Oasis Int'l Hotels,* 1999 WL 718556, *2 (E.D.Pa.); *ESAB Group, Inc. v. Centricut, LLC,* 34 F.Supp.2d 323, 330 (D.S.C. 1999), an "interactive" Web site, together with other contacts, can meet the minimum jurisdictional threshold. *See, e.g., Coastal Video Communications, Corp. v.*

*Staywell Corp.,* 59 F.Supp.2d 562, 568–71 (E.D.Va.); *Mieczkowski v. Masco Corp.,* 997 F.Supp. 782, 788 (E.D.Tex.1998); *Heroes, Inc. v. Heroes Foundation,* 958 F.Supp. 1, 5 (D.D.C.1996). Here, Lindamood–Bell's Web site is moderately interactive insofar as it permits Colorado-based consumers to submit requests for product catalogs, and information regarding workshops/conferences, individualized treatment programs, and school-wide treatment programs. For all of these requests, the requester is required to provide an electronic mail address, thus suggesting that individual Lindamood–Bell employees communicate via the Internet with requesters. In addition, individuals can register via the Web site for "open houses" or "clinics." Consequently, the commercial nature of the Web site's interactivity, coupled with the other contacts listed above, bolsters my conclusion that general personal jurisdiction exists with respect to Lindamood–Bell.

b.

■ Ms. Lindamood argues that general personal jurisdiction does not exist with respect to her. Specifically, she contends that her contacts with Colorado are not "continuous and systematic." Ms. Lindamood concludes that this case must be dismissed with respect to her.

Plaintiffs respond that the contacts of Lindamood–Bell are attributable to Ms. Lindamood. Because Ms. Lindamood has "allow[ed]" Lindamood–Bell to use her trademark and copyrighted materials since 1986, Lindamood–Bell acts as an agent for Ms. Lindamood. Consequently, the contacts of Lindamood–Bell are those of Ms. Lindamood for purposes of general personal jurisdiction.

I conclude that Lindamood–Bell's contacts are attributable to Ms. Lindamood for purposes of personal jurisdiction. The Tenth Circuit has held that "employees of a corporation that is subject to the personal jurisdiction of the courts of the forum may themselves be subject to jurisdiction if those employees were primary partici-

pants in the activities forming the basis of jurisdiction over the corporation." *In re An Application to Enforce Administrative Subpoenas Duces Tecum v. Knowles,* 87 F.3d 413, 418 (10th Cir.1996) (citing *Calder v. Jones,* 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)). Although the *Knowles* court ultimately found that the corporation's contacts there created *specific* personal jurisdiction over the individual defendant, *id.* at 413, there is no reason why the *Knowles* rule cannot be applied in the *general* personal jurisdiction context.

Here, there is no question that Ms. Lindamood, who is a director of Lindamood–Bell, was a "primary participant[ ] in the activities forming the basis of jurisdiction over" Lindamood–Bell. Ms. Lindamood granted Lindamood–Bell the right to use her trademark and copyrighted materials, and structured the corporation so that one of its primary goals is to "ensure that [Lindamood's] research-based programs . . . are available on a broader scale." *Defendants' Motion to Dismiss* at Ex. 1, ¶ 12. Lindamood–Bell achieved this purpose in consummating the four contracts with Colorado school districts insofar as all four provide training in Lindamood's research-based programs. In addition, Ms. Lindamood's copyrighted materials are prominently displayed in the solicitations mailed to Colorado residents. *See Plaintiff's Response* at Ex. F, App. 4. Finally, five days out of the ten day workshop offered by Lindamood–Bell in Denver in the summer of 1997 were dedicated to providing instruction regarding Ms. Lindamood's copyrighted work. *Plaintiff's Response* at Ex. F, App. 6. It is reasonable to infer that other Lindamood–Bell workshops/courses offered in Colorado included the same relative amount of instruction regarding Ms. Lindamood's work. Consequently, pursuant to *Knowles,* I attribute Lindamood–Bell's contacts to Ms. Lindamood and conclude that general personal jurisdiction exists with respect to her. *See id.*

3.

■ Exercising general personal jurisdiction over Defendants is not inconsistent with "traditional notions of fair play and substantial justice." As for Lindamood–Bell, the *Trierweiler* factors do not counsel dismissal. As revealed below in the section discussing Defendants' motion to transfer venue, Lindamood–Bell has not presented evidence indicating that the burdens on it, a corporate defendant, resulting from litigating this case in Colorado are insuperable. Moreover, because this case turns on federal law, Colorado's interest in resolving this dispute is at least as great as that of California. Finally, there is no indication that litigating this suit in Colorado will have a deleterious effect on the interstate judicial system's interest in obtaining the most efficient resolution of controversies, or the shared interest of the several states in furthering fundamental substantive social policies. Exercising personal jurisdiction over Lindamood–Bell is not unfair.

Nor does exercising personal jurisdiction over Ms. Lindamood offend "traditional notions of fair play and substantial justice." The *Knowles* court specifically held that exercising personal jurisdiction over an employee such as Ms. Lindamood does not pose any Due Process problems. *See Knowles,* 87 F.3d at 419 (quoting *International Shoe,* 326 U.S. at 316, 66 S.Ct. 154). Moreover, because Ms. Lindamood owns the copyright and trademark rights that are the subject of this suit, it is reasonable that she participate here. Indeed, Ms. Lindamood has the most substantial interest in the outcome of this action. For the foregoing reasons, I conclude that general personal jurisdiction exists with respect to Defendants.

C.

1.

■ Defendants next argue that venue is improper in Colorado because they reside in California. Specifically, Defendants contend venue in this case is governed by 28 U.S.C. § 1391(b), and that § 1391(b)(2) (venue is proper in "a judicial district in which a substantial part of the

events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated") can only be used to establish venue if § 1391(b)(1) (venue is proper in "a judicial district where any defendant resides, if all Defendants reside in the same State") does not. *See Defendants' Motion to Dismiss* at 12 (citing *Canaday v. Koch*, 598 F.Supp. 1139, 1148 (E.D.N.Y.1984) (relying on *Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979)); *Southern Marine Research, Inc. v. Jetronic Indus., Inc.*, 590 F.Supp. 1192, 1194 (D.Conn.1984) (same)). Defendants conclude that because they reside in the same federal judicial district in California, § 1391(b)(1) requires me to dismiss this action.

Plaintiffs agree that § 1391 governs the venue determination, but argue that § 1391(b)(1), (2) provide alternative grounds for venue. Instead, even if § 1391(b)(1) applies, § 1391(b)(2) can provide venue in a different state. *See Plaintiffs' Response* at 24 (citing *Merchants Nat'l Bank v. Safrabank*, 776 F.Supp. 538, 541 (D.Kan.1991); 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3806). Plaintiffs contend that because a "substantial part of the events or omissions giving rise to the claim occurred" in Colorado, venue is proper here.

Because I concluded above that personal jurisdiction exists with respect to Lindamood–Bell, I conclude that venue is also proper with respect to Lindamood–Bell. *See* 28 U.S.C. § 1391(c) ("For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."). Nevertheless, because Lindamood–Bell also resides in California, in determining whether venue is proper with respect to Ms. Lindamood I must address the dispute regarding the proper interpretation of § 1391(b). Defendants' motion and Plaintiffs' response definitely raise one and possibly two questions regarding § 1391(b): (1) can § 1391(b)(2)

be considered when all of the defendants reside in the same judicial district; and (2) if yes, where did "a substantial part of the events or omissions giving rise to the claim occur[ ]"? 28 U.S.C. § 1391(b)(2).

As to the first question, I conclude that § 1391(b)(1), (2) provide alternative grounds for venue. As an initial matter, I note that *Cobra Partners L.P. v. Liegl*, 990 F.Supp. 332, 335 (S.D.N.Y.1998) adopted the same interpretation of § 1391(b) as the *Canaday* and *Southern Marine Research* decisions. I also note that the decisions in *Canaday, Southern Marine Research, Inc.*, and *Cobra Partners* represent the minority view. *See Gregory v. Pocono Grow Fertilizer Corp.*, 35 F.Supp.2d 295, 298 (W.D.N.Y.1999) (citing cases). For the reasons stated below, I conclude that *Canaday, Southern Marine Research, Inc.*, and *Cobra Partners* are wrongly decided, and adopt the majority position.

The *Leroy* decision does not mandate the outcomes in *Canaday, Southern Marine Research*, and *Cobra Partners*. In *Leroy*, Great Western United Corporation ("Great Western"), a Delaware corporation with its corporate headquarters in Dallas, Texas brought an action in the northern district of Texas against state officials from Idaho, New York, and Maryland for a declaratory judgment regarding the constitutionality of laws of those states that delayed Great Western's proposed purchase of another corporation. In ruling on whether venue was proper the Supreme Court stated that "[i]n most instances the purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." 443 U.S. at 183–84, 99 S.Ct. 2710 (emphasis in original). The Court further explained that "the amendment giving plaintiffs the right to proceed in the district where the claim arose" was "designed to close the 'venue gaps' that existed under earlier versions of the statute in situations in which ... multiple defendants who contributed to a *single injurious act*, could not be sued jointly

because they resided in different districts." *Id.* at 184 & n. 17, 99 S.Ct. 2710 (emphasis added). The Court further noted that the amendment was not designed to address the situation in which a plaintiff attempts to join in one suit *separate claims* against multiple defendants from several states. *Id.* at 184, n. 17, 99 S.Ct. 2710. The Court concluded that § 1391(b) should not be read to apply to the latter situation. *Id.* at 184, 99 S.Ct. 2710 (in the absence of the type of " 'venue gap' that the amendment ... was designed to close, there is no reason to read it more broadly on behalf of plaintiffs.").

The *Canaday, Southern Marine Research,* and *Cobra Partners* courts interpreted *Leroy* to mean that in the absence of multiple defendants residing in different districts, the "claim arose" language of § 1391(b), or the equivalent language of its successor, § 1391(b)(2), should not be addressed. *Compare* 28 U.S.C. § 1391(b) (pre–1990) ("A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.") *with* 28 U.S.C. § 1391(b) (since 1990) ("A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought."). As indicated above, the Court in *Leroy* only intended to foreclose recourse to § 1391(b)(2) when a plaintiff seeks to bring separate claims against multiple defendants residing in different states. The Court thus clearly left open the possibility that courts could resort to § 1391(b)(2) when a plaintiff brings a claim against a single or multiple defendants.

Any doubt as to the accuracy of this interpretation of *Leroy* is dispelled by how the Supreme Court ultimately decided *Leroy*. In determining that Idaho was the proper venue for the case after the New York and Maryland defendants had been dismissed, the Court analyzed both where the remaining defendant resided *and* where the "claim arose." *See* 443 U.S. at 183, 99 S.Ct. 2710, ("The first test of venue under [§ 1391(b) ]—the residence of the defendants—obviously points to Idaho rather than Texas"), 185–86 ("it is the action taken in Idaho by Idaho residents ... as well as the future action that may be taken in the State by its officials ... that provides the basis for [the] claim.... In short, the District of Idaho is the only one in which 'the claim arose' within the meaning of § 1391(b)."). The *Canaday, Southern Marine Research,* and *Cobra Partners* interpretation fails to recognize that the *Leroy* court addressed where the claim in that case arose.

In addition, the 1990 amendment of § 1391(b) eliminated any remaining controversy regarding how venue should be determined. In addition to changing the "claim arose" language to "a substantial part of the events or omissions giving rise to the claim," and setting the basis for venue in separate subsections, Congress provided a new subsection— § 1391(b)(3)—and made it *subordinate* to the first two subsections. Congress easily could have done the same with respect to § 1391(b)(2), but it did not. This indicates Congress' intent that § 1391(b)(1), (2) are alternative grounds for venue. The *Canaday, Southern Marine Research,* and *Cobra Partners* decisions fail to give effect to the plain language of the statute.

Finally, I note that my interpretation of § 1391(b) is consistent with that of a leading treatise. *See* 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3804, at 16 (Supp.1999) ("The provision for residential venue, in paragraph (1) ... and the provision for transactional venue, in para-

graph (2) . . . are in the alternative. Venue is proper if either one of those conditions is met."); *id.* at § 3806, at 18 (Supp. 1999) ("It is [ ] clearer than ever that [§ 1391(b)(2) ] may be used in any case and is not limited to cases in which defendants could not be sued jointly because they resided in different districts.") For the foregoing reasons, I conclude that § 1391(b)(1), (2) are alternative grounds for venue.

2.

I must next decide where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). The dispute in this case results from the alleged conduct of Plaintiffs. There is no reason to alter this conclusion in the context of the venue analysis. *See Woodke v. Dahm,* 70 F.3d 983, 985 (8th Cir.1995) ("The place where the alleged [infringement] occurred . . . provides an obviously correct venue."). *See also Cottman Transmission Sys., Inc. v. Martino,* 36 F.3d 291, 294 (3d Cir.1994); *Tefal, S.A. v. Products Int'l Co.,* 529 F.2d 495, 496 n. 1 (3d Cir.1976) (decided under prior venue rule); *Vanity Fair Mills v. T. Eaton Co.,* 234 F.2d 633, 639 (2d Cir.), cert. denied, 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956) (same). Here, most, if not all, of Plaintiffs' alleged infringement has taken place in Colorado. That the alleged infringement arises in the context of a declaratory judgment action does not change the result. Accordingly, I conclude that venue is proper in Colorado with respect to Ms. Lindamood and Lindamood–Bell.

D.

▮ Defendants move in the alternative to transfer venue pursuant to 28 U.S.C. § 1404(a). Defendants argue that California is a more favorable forum because (1) witnesses and other proof are more accessible; (2) the cost of making the necessary proof is less; (3) there are more relative advantages and fewer obstacles to a fair trial; and (4) the California district "consistently disposes of civil matters more quickly prior to trial." *Defendants' Motion to Dismiss* at 16.

I conclude that the balance of considerations is not strongly in favor of Defendants, and consequently that the plaintiff's choice of forum should not be disturbed. *Travelers Indem. Co.,* 467 F.2d at 664. Because this is a declaratory judgement action regarding whether Ms. Wise's text infringes Ms. Lindamood's copyright and trademark, and because Plaintiffs do not contest the validity of Ms. Lindamood's copyright and trademark, *see Plaintiffs' Response* at 29, this case may turn primarily on expert opinion. I need not hear, therefore, testimony regarding "the facts related to preparation and compilation of the copyrighted and trademarked material . . . in California." *Defendants' Motion to Dismiss* at 15. Because Defendants have not identified any experts who would be more accessible in California, I conclude that the accessibility of witnesses and other proof, and the cost of making the necessary proof do not favor California. Because Defendants' also rest their argument regarding the relative advantages and obstacles to a fair trial on the accessibility of witnesses, I conclude that this factor also does not favor transfer.

Finally, in support of their argument that the California district "consistently disposes of civil matters more quickly prior to trial," Defendants cite to statistics published in the *Federal Court Management Statistics.* Defendants do not specifically reference, or otherwise identify, the information upon which they rely on the two pages cited. Nevertheless, the only relevant statistics indicate that *in 1998* the Central District of California disposed of civil matters prior to trial on average two months faster than the District of Colorado. Two months, to the extent such a statistic is accurate both *in 1999* and with respect to my docket, hardly seems the basis for a change of venue. Defendants also do not cite any authority indicating that relative length of time of disposition of civil matters prior to trial is even relevant to my consideration of whether Colorado is the most convenient forum. For

these reasons, I deny Defendants' motion to transfer for convenience.

Accordingly, I ORDER that:

(1) Defendants' motion to dismiss pursuant to Rule 12(b)(2) is DENIED;

(2) Defendants' motion to dismiss for improper venue pursuant to 28 U.S.C. § 1391(b) is DENIED;

(3) Defendants' motion for transfer of venue pursuant to 28 U.S.C. § 1404 is DENIED; and

(4) the stay that I ordered pending determination of Defendants' motion to dismiss or to transfer is VACATED.